UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RANDY M. WHITE | CIVIL ACTION |
| VERSUS | NO. 22-3049 |
| ST. TAMMANY PARISH SHERIFF'S DEPARTMENT, ET AL. | SECTION "D" (2) |

### REPORT AND RECOMMENDATION

Plaintiff Randy M. White filed a complaint (ECF No. 3) pursuant to 42 U.S.C. § 1983 which was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Having considered the record, including plaintiff's complaint, § 1983 fact response, and *Spears*[1] hearing testimony, and the applicable law, the undersigned enters the following findings and recommendations.

I.  **FACTUAL ALLEGATIONS**

  A.  **Complaint (ECF Nos. 3 and 3-1)**

White, while a pretrial detainee, filed a *pro se* and *in forma pauperis* complaint pursuant 42 U.S.C. § 1983 against defendants St. Tammany Parish Sheriff's Department, St. Tammany Parish Sheriff Randy Smith, and Deputy Willie.[2] He alleges that, on July 25, 2022, he was in an altercation with another inmate in the C-700 dayroom in the St. Tammany Parish Jail ("STPJ") during which Deputy White used excessive force that injured him.[3] Specifically, White claims

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989).
[2] ECF No. 3, ¶IV, at 2; ECF No. 3-1, at 3, ¶III(A).
[3] ECF No. 3, at 2, ¶IV; ECF No. 3-1, at 4, ¶IV.

that, after he had complied with orders to stop fighting, Deputy Willie nevertheless dove and tackled (or speared into) plaintiff, during which his hand was broken.[4]  As relief, White requests that his medical expenses be paid and his hand surgically repaired.[5]  He also wants money for pain and suffering and for Deputy Willie to be fired.[6]

### B.    Reply to the Court's § 1983 Response Order (ECF No. 9)

On September 19, 2022, I issued an order for White to provide a summary of his claims including, among other things, identification of those he asserts violated his rights.[7]  In his response, White stated that he was in a physical altercation with another inmate and, after he turned away, Deputy Willie dove into and tackled him.[8]  White asserted that the deputy used unnecessary or excessive force, caused intentional infliction of emotional distress, and/or acted with deliberate indifference when he ran and dove to tackle White.  White also stated that his left hand was broken in the fall, and he now has nerve damage.

White indicated that he would like to present the camera footage from the dayroom to support his claims.  He listed as potential witnesses Deputy Willie, the STPJ, Sheriff Smith, and any and all employees at the STPJ.[9]  He also requests financial compensation.

Attached to his response are copies of the results of his grievance complaint against Deputy Willie.  The papers reflect that, on August 18, 2022, White filed a grievance complaint about his broken hand, hurt lower back, and money removed from his account for medical treatment.[10]  He requested the return of money to his account.  The first step response, dated September 2, 2022,

---

[4] *Id*.
[5] ECF No. 3-1, at 5, ¶V.
[6] *Id*.
[7] ECF No. 5.
[8] ECF No. 9, at 1.
[9] *Id*. at 2.
[10] *Id*. at 5.

found the grievance to be unfounded with no further explanation.[11] The form also references a typed attachment that White did not provide to the court.

As a final review step of the administrative remedy procedure, White received a September 6, 2022, summary review from Sheriff Smith's legal counsel, which also disposed of the grievance as unfounded.[12] The summary indicates that on July 25, 2022, White was involved in a physical altercation with another inmate in the dayroom. White did not respond to repeated verbal commands to stop fighting and continued to strike the other inmate in the face and upper body. The correctional staff intervened to prevent further attack on the other inmate. After the incident, White was taken to the medical unit and eventually to the hospital for further examination.

The summary also indicated that, at the time, Deputy Willie's use of force was under review as per jail policy. In addition, counsel indicated that White received care from the medical staff and University Medical Center ("UMC") for a left-hand fracture. The hand was placed in an immobilization splint by the emergency room physician. However, when White appeared for treatment in the jail, his hand was in an ace bandage and not the splint. When he had his follow-up exam with the hand specialist on August 4, 2022, a new splint was put on the hand. Records show that White later removed the splint despite physician's orders. When he returned to the hand specialist on August 11, 2022, the hand was placed in a full cast. When examined at UMC on September 1, 2022, White voiced complaints of pain and numbness, but refused a steroid injection. White was still receiving pain medication and was under continued care.

---

[11] *Id.* at 6.
[12] *Id.* at 3.

White also included a September 16, 2022, medical grievance form complaining that he was not receiving the proper medication for an eye infection, his hand, and his knee.[13] He did not provide the responses to that complaint.

### C.    *Spears* **Hearing Testimony**

On May 23, 2023, I conducted a video conference with White, who was sworn and testified for all purposes permitted by *Spears*, 766 F.2d at 179, and its progeny.[14] The conference was electronically recorded.

During the hearing, White testified that, prior to his release from jail, he received copies of his medical records as ordered by the court and had no objections to the entries in those records.[15] He also indicated that his medical care complaints were not directed at the named defendants or medical personnel at STPJ. Instead, he was dissatisfied with the delays and attitude of the medical staff in SBPJ.

White further testified that, on July 25, 2022, he was in STPJ in dorm C-700 dayroom when he started a fight with another inmate. He stated that he and the inmate had verbally argued throughout the day, and the inmate also cut ahead of him in the store line. While in the dayroom, the inmate bent down as if to get something, so White started punching him before the inmate could do something to him first. White stated that he hit the inmate two or three times, not hard, and pulled the inmate's hair. At that point, he heard deputies yelling from the hallway for about ten seconds for him to stop. He stated that he was not combative with the officers and instead

---

[13] *Id*. at 7.
[14] ECF No. 29.
[15] As discussed with White during the *Spears* hearing, the court obtained copies of his medical records from STPJ and SBPJ prior to the hearing. White acknowledged that he received the records before he was released from jail in December of 2022, and has since lost his copies. He stated that he recalls having no issues with the entries in the medical records he received. Copies of the medical records are filed in the court's record under seal at ECF Nos. 16 and 22.

turned to face the deputies entering the dayroom so they could detain him. That is when he was tackled by Deputy Willie, who dove or speared into him. The tackle and fall pushed him about five to eight feet into the toilet area where he hit his head and his finger was broken. He denied that the finger was broken in the fight, and insisted that it happened in the fall from the tackle. He recalled that a second deputy claimed to have heard the sound of the break when he fell near the toilet.

White indicated that his dominant left hand and wrist were "shattered" and he has since had two surgeries, including a recent surgery for carpal tunnel issues. That surgery was done about two weeks ago at UMC by Dr. Stanley, and she told him that this issue was related to the injury that occurred on July 25, 2022.

White further stated that he did not recall receiving a disciplinary infraction for the fight with the inmate. Instead, when he returned from the hospital, he was placed in special housing unit for a Covid watch. He and the other inmate were eventually returned to separate dormitories and had no further issues. White stated that he filed a grievance complaint and exhausted administrate review about the incident with Deputy Willie before filing this suit.

White testified that he received immediate medical care for his hand at the jail and was taken to UMC for further care. He also received regular treatment and follow-up care at STPJ and does not allege intentional indifference to his care by the personnel there. Prior to his transfer to SBPJ, he was referred by the doctor for possible surgery for a left deQuervain's release[16] on October 7, 2022. White confirmed that he was moved to SBPJ on September 9, 2022, and was immediately evaluated and received regular follow-up care for his hand through September. When

---

[16] DeQuervain's tenosynovitis is a painful inflammation of tendons in the wrist and lower thumb. Surgery may be done to release the tendon sheath so the tendon can move smoothly. https://www.webmd.com/rheumatoid-arthritis/guide/de-quervains-disease.

he complained about hand pain in September and October, he was examined and provided with medication, although it did not help. His surgery also had to be rescheduled by the SBPJ medical staff because White was involved in a fight with an inmate at SBPJ on October 6, 2022. He received treatment for his hand through November, 2022, including another x-ray after the fight, which delayed the surgery to December 2, 2022.

White stated that he returned to jail from the hospital the same day as the surgery, but was not provided with the pain medication and antibiotic prescribed after surgery. He stated that he repeatedly complained to the nursing staff and was told only that they had to wait for the prescription to be filled. He was eventually released from jail on December 6 or 8, 2022, without receiving the medication or copies of the prescriptions to get the medicine himself. After his release, he self-diagnosed and treated what he believed to be an infection in his hand where he had surgery. He stated that he got a Bactrim prescription from UMC but did not go to the hospital.

White stated that the medical staff at SBPJ was generally responsive to his complaints but that he sometimes had to wait four or five hours to see someone. He also stated that he found Dr. Gore at SBPJ to have been rude to him during their visits. He could recall the name of one nurse, Nurse Mike, at SBPJ who was among the several nurses that told him that he had to wait for his prescriptions to be filled after the surgery. White also made several requests through the kiosk and orally to the medical staff for the medication to no avail. He stated that he may also have filed a grievance complaint at SBPJ about the medicine.

White stated that after the injury to his hand and surgeries, he is unable to bend his left index finger and cannot close his dominate left hand into a fist. He also testified that he recently had the carpal tunnel surgery, during which the surgeon placed two screws and a plate into his hand. He stated that will have hand problems for the rest of his life.

White stated that he does not know Deputy Willie's last name, but has sued him because of his use of unnecessary force on July 25, 2022, which caused his broken finger and hand issues. He also sued Sheriff Smith because he is the sheriff over Deputy Willie and the STPJ. White indicated that the Sheriff was not present during his fight with the inmate or involved in the tackle by Deputy Willie. He stated that he did not talk to the Sheriff about the incident or his injuries, although he mentioned the lawsuit during a conversation with the Sheriff's lawyer during a conference about a pair of lost boots.

## II.     LEGAL STANDARDS

### A.     Statutorily Required Screening

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[17] A claim is frivolous if it "lacks an arguable basis in law or fact."[18] A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[19] A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[20] A court may not dismiss a claim simply because the facts are "unlikely."[21]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in

---

[17] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin*, 156 F.3d at 579-80.
[18] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327).
[19] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).
[20] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).
[21] *Id.*

the complaint are true, even if doubtful.[22] The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments.[23] The Fifth Circuit has summarized the standard for Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[24]

"[W]hen evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff."[25] Thus, the court should assume the veracity of all well-pleaded allegations, viewing them in the light most favorable to the plaintiff, "'and then determine whether they plausibly give rise to an entitlement to relief.'"[26]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and FED. R. CIV. P. 12(b)(6), *Neitzke*, 490 U.S. at 319, held that a claim that is dismissed under one rule does not "invariably fall afoul" of the other.[27] If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and § 1915(e).[28] "When a complaint

---

[22] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[23] *Walch v. Adjutant Gen.'s Dep't*, 533 F.3d 289, 293 (5th Cir. 2008) (citation omitted).
[24] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and quoting *Twombly*, 550 U.S. at 544).
[25] *Id.* at 803 n.44 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted)); *accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014)); *Maloney Gaming Mgt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (quoting *Elsensohn v. St. Tammany Par. Sheriff's Ofc.*, 530 F.3d 368, 371 (5th Cir. 2008) (quoting *Iqbal*, 556 U.S. at 696); *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 n.10 (5th Cir. 2017)).
[26] *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 664); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
[27] *Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d)) (current version at 28 U.S.C. § 1915(e)).
[28] *Id.*

raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[29]

### B. Purpose of the *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[30] The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[31] "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[32] The information elicited at such an evidentiary hearing is in the nature of an amended complaint or more definite statement under Rule 12(e).[33] The testimony from the *Spears* hearing will supersede the allegations of the plaintiff's complaint.[34] "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[35]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely on documents as additional evidence if they are properly identified, authentic and reliable.[36] "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."[37]

---

[29] *Id.*
[30] *Spears*, 766 F.2d at 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).
[31] *Id*.
[32] *Davis*, 157 F.3d at 1005–06.
[33] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).
[34] *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987).
[35] *Spears*, 766 F.2d at 182.
[36] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton*, 504 U.S. at 25; *Wilson*, 926 F.2d at 482).
[37] *Id.*

### III. LAW AND ANALYSIS

#### A. Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[38]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[39]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;
(2) that occurred under color of state law; and
(3) was caused by a state actor.[40]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[41] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[42] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[43]

---

[38] 42 U.S.C. § 1983.
[39] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).
[40] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[41] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[42] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).
[43] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).

B.     **Improper Defendant**

White sued the St. Tammany Parish Sheriff's Department as a defendant apparently based on his location in the STPJ when he was injured. To recover under § 1983, the plaintiff must identify both the constitutional violation and the responsible person acting under color of state law.[44] "However, a parish sheriff's office is not a legal entity capable of being sued in a federal civil rights action."[45] The State of Louisiana grants no such legal status to any law enforcement office or department.[46] Further, the Sheriff's Department is not a "person" for purposes of § 1983 liability.[47]

Because the St. Tammany Parish Sheriff's Department is not a person or suable entity to be held liable under § 1983, White's claims against it must be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1915A as frivolous, and otherwise for failure to state a claim upon which relief can be granted.

C.     **Inadequate Medical Care at SBPJ**

During the *Spears* hearing, White discussed for the first time his disfavor with the medical staff, including Dr. Gore and Nurse Mike, at the SBPJ where he was housed between September and December of 2022. The testimony received at the *Spears* hearing is in the nature of an amendment to the complaint.[48] As such, I find it necessary to address the new claims as to SBPJ,

---

[44] *See Flagg Bros., Inc.*, 436 U.S. at 155–56 (stating the respondents are first bound to show that they have been deprived of a constitutional right and that the individual, i.e. the Flagg Brothers, deprived them of this right).
[45] *Francis v. Terrebonne Par. Sheriff's Office*, No. 08-4972, 2009 WL 4730707, at *2 (E.D. La. Dec. 9, 2009) (citing *Cozzo v. Tangipahoa Par. Council-Pres. Govt.*, 279 F.3d 273, 283 (5th Cir. 2002); *Williamson v. Louisiana*, No. 08-4598, 2008 WL 5082911, at *3 (E.D. La. Nov. 24, 2008); *Fitch v. Terrebonne Par. Sheriff Dep't*, No. 06-3307, 2006 WL 2690077, at *2 (E.D. La. Sept. 18, 2006); *Martinez v. Larpenter*, No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); *Causey v. Par. of Tangipahoa*, 167 F. Supp.2d 898, 904 (E.D. La. 2001); *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988)); *Martin v. Davis*, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (citing LA. REV. STAT. ANN. § 33:361).
[46] *Liberty Mut. Ins. Co. v. Grant Par. Sheriff's Dep't*, 350 So. 2d 236, 238 (La. App. 3d Cir. 1977).
[47] *Calhoun v. Sanderson*, No. 01-3765, 2003 WL 1595088, *5 (E.D. La. Mar. 25, 2003) (citation omitted); *Creppel v. Miller*, No. 92-2531, 1993 WL 21408, *1 (E.D. La. Jan. 22, 1993) (citation omitted).
[48] *Wilson*, 926 F.2d at 482 (citing *Spears*, 766 F.2d at 181-82).

Dr. Gore and Nurse Mike.  However, for the reasons set forth in Section III(B), SBPJ would not be a proper § 1983 defendant.  Thus, any claim against SBPJ is frivolous and otherwise for failure to state a claim upon which relief can be granted, leaving the potential claims against Dr. Gore and Nurse Mike to be addressed.

A prisoner, whether pretrial or convicted, may succeed on a claim under § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.[49]  Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[50]  Further, the deliberate indifference factor demands subjective knowledge of a substantial health risk and failure to respond to it.[51]

"Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[52]  An inmate's claims of negligent care or his mere disagreement with the speed, quality, or extent of medical treatment received, however, does not give rise to a § 1983 claim.[53]  Indeed, a delay in receiving

---

[49] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).
[50] *Id*. at 104-05.
[51] *Gobert v. Caldwell*, 463 F.3d 339, 348 (5th Cir. 2006).
[52] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Domino v. Tex. Dept. of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).
[53] *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (although inmate died, active treatment of his serious medical condition refuted claim of deliberate indifference, even if treatment was negligently administered); *accord Rowe v. Norris*, 198 F. App'x 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); *Marksberry v. O'Dea*, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (alleged inadequate treatment for broken hand failed to state constitutional violation, when inmate was examined by physician and received x-rays and medication); *Williams v. Browning*, No. 03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment alleged he was unable to timely obtain his medications did not establish any substantial harm from the delay and failed to state a claim for deliberate indifference).

medical treatment is only actionable when the delay is caused by defendants' deliberate indifference and the delay results in substantial harm to the plaintiff.[54]

White alleged two concerns about his medical care at SBPJ: (1) Dr. Gore was rude and disrespectful during their conversations; and (2) he repeatedly asked the medical personnel, including Nurse Mike, for his post-surgery medicine and he was repeatedly advised that the staff was waiting for the prescriptions to be filled. As for his complaints about Dr. Gore, while poor bedside manner on the part of a physician may be unprofessional, such behavior, without more, simply does not rise to the level of a constitutional violation.[55] A doctor's poor bedside manner is not alone actionable or indicative of deliberate indifference to a serious medical need.[56] White conceded at the *Spears* hearing that Dr. Gore was the doctor who examined him and recommended the first surgery. Dr. Gore also continued to regularly examine him and provided prescription pain medication prior to the surgery. White has not alleged that the doctor refused to treat him or ignore his complaints. He cannot allege intentional indifference based solely on Dr. Gore's discourteous manner.

White's second complaint was with the failure of the SBPJ nurses to provide him with prescribed post-surgery medication between his return to jail on December 2, 2022 and his release from jail on December 6 or 8, 2022. He complains that this was more time than needed to fill the

---

[54] *See, e.g., Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, *4 (E.D. La. Mar. 29, 2012) (three week delay before seeing a doctor was not unreasonable for nonemergency care).
[55] *See, e.g., Naquin v. Jack*, No. 20-458, 2020 WL 8675909, at *11 (E.D. La. July 16, 2020) ("[P]laintiff cannot premise his § 1983 claim on alleged rude or disrespectful comments by prison personnel."), *report and recommendation adopted*, 2021 WL 780750 (E.D. La. Mar. 1, 2021); *Jones v. Ledet*, No. 19-10969, 2019 WL 6040091, at *4 (E.D. La. Oct. 22, 2019) ("[W]hile it is unseemly for jail officials to taunt or otherwise verbally abuse inmates who have little or no ability to respond without subjecting themselves to a disciplinary action (or worse), purely verbal abuse simply does not run afoul of any federal constitutional protection."), *report and recommendation adopted*, 2019 WL 6036706 (E.D. La. Nov. 14, 2019).
[56] *See, e.g., Boone v. Buchanan*, No. 07-242, 2008 WL 744247, at *14 (E.D. Tex. Mar. 19, 2008) (doctor's comments that they had spent enough money and time on inmate was not deliberate indifference where doctor did not refuse to treat him or ignore his complaints and instead examined the inmate, prescribed a treatment regimen).

prescriptions. However, he did not allege that the delay was intentionally done to cause him harm or that the delay resulted in further harm to his hand. Instead, White recognized that after his surgery, while still in SBPJ, the medical staff responded to each of his complaints but simply could not provide him with medicine they did not have. Under the foregoing standards, the delay alone and his dissatisfaction with the response are insufficient to state a non-frivolous claim of inadequate medical care.

White also stated that <u>after</u> his release, while homeless, he developed an infection at the surgery site, which he took care of himself. He further acknowledged that he did not go to the hospital but eventually called UMC to get a prescription antibiotic. He has not alleged that the infection that appeared after his release while homeless was directly attributable to a member of the medical staff at SBPJ.

For these reasons, accepting White's testimony as an amendment to this lawsuit, he has not alleged deliberate indifference by a particular person at SBPJ and has not stated a non-frivolous claim for inadequate medical care. His claims should be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1915A as frivolous, and otherwise for failure to state a claim upon which relief can be granted.

      D.    **<u>Supervisory Liability</u>**

White named Sheriff Smith as a defendant based solely on his supervisory position over Deputy Willie and the jail. White testified at the *Spears* hearing that Sheriff Smith was not present for the fight with the other inmate or involved in the tackle made by Deputy Willie. White also acknowledged that he did not speak with the Sheriff about the incident.

To hold a defendant personally liable under § 1983, plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights

or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation."[57]  White has not alleged that Sheriff Smith was personally involved in any acts causing the alleged deprivation of his constitutional rights.  He further fails to allege that a causal connection exists between any act of Sheriff Smith and the alleged constitutional violations.

There is no *respondeat superior* liability under section 1983.[58]  Thus, the Sheriff cannot be held liable under § 1983 pursuant to a theory of *respondeat superior* simply because Deputy Willie was in his employ or under his supervision.[59]  Thus, a plaintiff must instead establish that he suffered a constitutional violation or physical injury directly resulting from an order, policy, or directive implemented by the sheriff to create vicarious liability under § 1983.[60]  White, however, has not referenced any order, training, or other policy implemented by the Sheriff that factored into the events about which he complains.

White has alleged no personal action by or connection with Sheriff Smith to hold the Sheriff liable under § 1983 based on the actions of Deputy Willie.  Thus, White's claims against Sheriff Smith should be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

---

[57] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1114-15 (5th Cir. 2006).
[58] *Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009); *see Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) ("There is no *respondeat superior* liability under section 1983."); *accord Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1114-15.
[59] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983).
[60] *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 1991); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *see also*; *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (Supervisory officials "are not liable for the actions of subordinates on any theory of vicarious liability" and will only be liable if the official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."); *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998) (a supervisory official may be liable for the acts of a subordinate if the plaintiff can establish that the supervisor either failed to supervise or train the subordinate, that a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and the failure to train or supervise amounted to deliberate indifference).

### E.     <u>Excessive Force</u>

White alleges that, in response to a fight he was having with another inmate, Deputy Willie tackled him to the ground causing him to hit his head and fracture his left index finger, which has resulted in two surgeries and life-long injury to his hand and wrist. For pretrial detainees like plaintiff, claims of excessive force concern substantive due process rights under the Fourteenth Amendment.[61]

Force against a pretrial detainee is "excessive" and a violation of the Fourteenth Amendment when the force was objectively unreasonable.[62] Several factors may be considered to determine the reasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."[63] The court is to look only to the objective reasonableness of the force without regard to underlying intent or motivation.[64] "[A] pretrial detainee can prevail by providing only objective evidence that the

---

[61] *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) ("The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.") (citing *Bell v. Wolfish*, 441 U.S. 520 (1979) (stating the State must distinguish between a pretrial detainee and convicted felon as the State cannot punish a pretrial detainee)).

[62] *Fairchild v. Coryell Cnty.*, No. 20-50237, 2022 WL 2733704, at *2 (5th Cir. July 14, 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–70 (2015)). In *Kingsley*, at 396-98, the Supreme Court concluded that the pretrial detainee need only show the force was "objectively reasonable," and expressly rejected the subjective standard used for convicted prisoners, *i.e.* that the plaintiff must prove that the use of force was not applied in good faith effort to maintain or restore discipline but, rather, was applied maliciously and sadistically to cause harm. *Andrew v. St. Tammany Par.*, No. 15-2105, 2016 WL 447680, at *7 (E.D. La. Jan. 15, 2016) (citing *Brown v. Gusman*, No. 15-1491, 2015 WL 6827260, at *3-4 (E.D. La. Nov. 6, 2015)), *report and recommendation adopted* 2016 WL 430455 (E.D. La. Feb. 4, 2016). *Kingsley* indicates "the language of the [Eighth Amendment's Cruel and Unusual Punishment Clause and Fourteenth Amendment's Due Process Clause] differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Kingsley*, 576 U.S. at 359-401 (citing *Ingraham v. Wright*, 430 U.S. 651, 671-72 (1977); *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[63] *Kingsley*, 576 U.S. at 397.

[64] *Gonzalez v. Seal*, No. 13-34, 2013 WL 6244183, at *8 (E.D. La. Dec. 3, 2013) (citing *Graham*, 490 U.S. at 397).

challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."[65]

White testified during the *Spears* hearing that he had already stopped hitting the other inmate within seconds of hearing the officers call out for him to stop and before they entered the dayroom. He stated that, in an effort to comply and surrender himself to the officers, he turned towards them as they entered the dayroom. Before he could complete the turn, he was taken down by Deputy Willie. He claims that he obeyed the calls to stop and was not being combative, making the tackle by Deputy Willie excessive and unnecessary.

Considering White's complaint and testimony, he has at least provided sufficient facts to state a non-frivolous claim of excessive force under the factors listed above. White claims that he was not resisting and instead was expecting to be taken into custody for fighting. He alleges that there was no need for the use of force because he complied with the officers' commands and had stopped fighting. He suffered significant injury to his left hand which he attributes directly to being tackled by Deputy Willie and not the fight itself. Accepting his assertions as true, White's claims against Deputy Willie should be allowed to proceed forward for further proceedings.

## IV. RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff Randy M. White's 42 U.S.C. § 1983 claims against the St. Tammany Parish Sheriff's Department and Sheriff Randy Smith and his § 1983 claims of inadequate medical care at the St. Bernard Parish Jail, whether asserted against St. Bernard Parish Jail, Dr. Gore or Nurse Mike, be **DISMISSED WITH PREJUDICE** pursuant

---

[65] *Kingsley*, 576 U.S. at 398 (citing *Bell*, 441 U.S. at 540; *Block v. Rutherford*, 468 U.S. 576, 585-86 (1984)); *see also Andrew*, 2016 WL 447680, at *8 (citing *Thompson v. Beasley*, 309 F.R.D. 236, 247 (N.D. Miss. 2015)) (discussing that while *Kingsley* used the disjunctive "or," courts post-*Kingsley* have framed the inquiry as "whether, from an objective point of view [defendant's] actions were rationally related to a legitimate, nonpunitive governmental purpose and whether his actions were excessive in relation to that purpose.")

to 28 U.S.C. § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that plaintiff White's 42 U.S.C. § 1983 claim of excessive use of force by Deputy Willie on July 25, 2022, be allowed to proceed and remain referred to the undersigned Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[66]

New Orleans, Louisiana, this 27th day of June, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[66] *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996). *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.