## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RANDY M. WHITE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-3049** |
| **ST. TAMMANY SHERIFF'S DEPARTMENT, ET AL.** | **SECTION: D (2)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant Cole Willie ("Willie").[1] Plaintiff Randy White ("White") opposes the Motion.[2] After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **GRANTS** the Motion.

### I.    FACTUAL BACKGROUND

On September 16, 2022, White, proceeding *pro se* and *in forma pauperis*, filed a Complaint in this Court, naming as Defendants the St. Tammany Sheriff's Department, Sheriff Randy Smith, and Deputy Cole Willie.[3] In his Complaint, White alleges that on July 25, 2022, while incarcerated as a pretrial detainee,[4] he "was involved in an altercation (fight) dep Willie used unnecessary force he ran dove a football tackled [him] in result [his] hand was broken it happened in C-700 in the dayroom."[5] Magistrate Judge Currault held a *Spears* hearing on May 23, 2023, during which White provided additional details of the encounter.[6]

---

[1] R. Doc. 63.
[2] R. Doc. 79.
[3] R. Doc. 1 at 2; R. Doc. 7.
[4] R. Doc. 3-1 at 3.
[5] R. Doc. 3 at 2.
[6] R. Doc. 30.

Video surveillance of the incident likewise provides additional context.[7] Video footage shows a prison dayroom with approximately fifteen inmates sitting at tables, making phone calls, and conversing.[8] In the video, White can be seen pacing around the dayroom.[9] Ferguson is in the corner of the dayroom and appears to be picking up and putting his personal items into a bag.[10] White paces around the dayroom several times, quickens into a run, and begins punching Ferguson who appears to have been kneeling on the floor picking up laundry or pieces of clothing.[11] White testified that as he was punching Ferguson, he heard deputies yelling from the hallway for him to stop.[12] White further testified that he began to turn towards Deputy Willie, but had not yet fully turned, when Willie tackled White.[13]

On June 27, 2023, following the *Spears* hearing, Judge Currault issued a Report and Recommendation, recommending that the Court allow White's claim of excessive force by Willie to proceed but that it dismiss the remainder of White's claims as frivolous.[14] Neither party filed an objection, and the Court approved and adopted Judge Currault's Report and Recommendation on July 31, 2023.[15]

---

[7] R. Doc. 63-8.
[8] *Id.*
[9] *Id.* at 10:32-11:23.
[10] *Id.*
[11] *Id.* at 10:32-11:30.
[12] R. Doc. 31 at 4.
[13] R. Doc. 63-8 at 11:31. The Court notes that other than White's allegation that White was not being combative when Willie tackled him, White's sworn testimony regarding the incident exactly mirrors the video of the incident. To the extent White's testimony contradicts the video of the incident, the Court does not consider White's testimony. *See Thompson v. Mercer*, 762 F.3d 433, 436 (5th Cir. 2014) ("Although courts must construe evidence in light most favorable to the nonmoving party, we will not adopt a plaintiff's characterization of the facts where unaltered evidence contradicts that account.").
[14] R. Doc. 31 at 17-18.
[15] R. Doc. 32.

On September 20, 2024, Willie filed a Motion in Limine to Exclude Plaintiff's Expert Testimony and Expert Reports,[16] which remains pending.  Thereafter, on September 24, 2024, Willie filed the instant Motion for Summary Judgment, in which he asks the Court to dismiss White's claim against him based on qualified immunity.[17]  In support of his Motion, Willie argues that White's claim cannot succeed because the force Willie used against White was not objectively unreasonable.[18]  Willie argues that he only used as much force as was necessary to break up the altercation started by White, he tackled White only after White ignored repeated verbal commands to stop hitting Ferguson, and Willie reasonably perceived the scene before him to require the force used.[19]

White filed a response to White's Motion for Summary Judgment.[20]  In it, White asks the Court to allow him to proceed with trial because he wishes to have an opportunity to explain his case at trial.[21]  White argues that Willie's use of force was excessive and that "instead of allowing [White] to let [Willie] and the other officers detain [White] without" using excessive force, Willie acted in a way that caused serious damage to White.[22]  White asks that "because of . . . Willie's judgement [sic], please allow [White's] case to remain open to go to trial."[23]

---

[16] R. Doc. 61.
[17] R. Doc. 63.
[18] R. Doc. 63-2 at 11.
[19] *Id.* at 13-18.
[20] R. Doc. 79.
[21] *Id.* at 1.
[22] *Id.* at 2.
[23] *Id.*

## II.    LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24]  A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[25]  Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[26]  When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[27]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[28]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[29]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[30]  The

---

[24] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[25] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).

[26] *Anderson*, 477 U.S. at 248.

[27] *Delta & Pine Land Co. v. Nationwide Agribus. Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

[28] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotations omitted).

[29] *Id.* at 399 (citing *Anderson*, 477 U.S. at 248).

[30] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).

non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[31] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[32] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[33] "When there is video evidence in the record, courts are not bound to accept the nonmovant's version of the facts if it is contradicted by the video."[34] However, "a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account."[35]

"A qualified immunity defense alters the usual summary judgment burden of proof."[36] "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the

---

[31] *Id*. at 1265.
[32] *See Celotex*, 477 U.S. at 322–23.
[33] *Id*. at 324 (quoting FED. R. CIV. P. 56(e)).
[34] *Crane v. City of Arlington*, No. 21-CV-10644, 2022 WL 4592035, at *4 (5th Cir. Sept. 30, 2022) (citing *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014)).
[35] *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018) (citing *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)).
[36] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

official's allegedly wrongful conduct violated clearly established law."[37]    However, when considering a qualified immunity defense, the court must still view the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmoving party's favor.[38]

## III.    ANALYSIS

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[39]    "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[40]    The Supreme Court has made clear that qualified immunity functions as an immunity from suit, rather than a mere defense to liability.[41]    "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[42]    "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[43]

---

[37] *Id.*
[38] *Rosado v. Deters*, 5 F.3d 119, 122–23 (5th Cir. 1993).
[39] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[40] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).
[41] *Id.* at 237 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (internal quotation marks omitted).
[42] *Brumfield v. Hollins*, 551 F.3d 322, 326–27 (5th Cir. 2008) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).
[43] *Bazan*, 246 F.3d at 488 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001)) (internal quotations omitted).

To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[44]  Put differently, a government official's liability "generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken."[45]  When deciding whether the right allegedly violated was 'clearly established,' [a] court asks whether the law so clearly and unambiguously prohibited the conduct that every reasonable official would understand that what he is doing violates the law."[46]  In other words, precedent existing at the time of the challenged conduct "must have placed the statutory or constitutional question beyond debate."[47]

The Court considers first whether Willie violated White's constitutional rights. Here, White argues that Willie's force against him was excessive.  Force against a pretrial detainee is "excessive" and therefore a violation of the detainee's Fourteenth Amendment rights when the force was objectively unreasonable.[48]  The reasonableness of an officer's actions "turns on the 'facts and circumstances of each particular case.'"[49]  "A court must make this determination from the perspective of a

---

[44] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

[45] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

[46] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013); *see also Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) ("A government official's acts are not objectively unreasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights.").

[47] *al-Kidd*, 563 U.S. at 741.

[48] *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

[49] *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."[50]  Critically, courts "must also account for the 'legitimate interests that stem from the government's need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in the judgement' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'"[51]  Considerations bearing on reasonableness or unreasonableness of force used include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response.[52]

The first factor considers the extent of the injury suffered.  "Although a showing of 'significant injury' is not necessary," a plaintiff must show that he "suffered at least some form of injury that is more than de minimis."[53]  The Court notes that although White alleges injuries to his hand, White has not pointed the Court to summary judgment evidence showing the extent of his injuries.[54]  Even assuming White's injuries are more than *de minimis*, and thus weighing this factor

---

[50] *Id.* (citing *Graham*, 490 U.S. at 396).

[51] *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

[52] *Id.* (quoting *Graham*, 490 U.S. at 396).

[53] *Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011).

[54] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (internal quotations and citation omitted).

in his favor, however, White cannot succeed on his claims, because the remaining factors weigh against a finding of excessive force.

It is undisputed that on July 25, 2022, while in a prison dayroom, and in the presence of approximately fifteen other inmates, White initiated an altercation with Ferguson, a fellow inmate.[55]  After he circled the dayroom several times,[56] White hurriedly moved towards Ferguson, who was kneeling down at the time,[57] and began to punch him repeatedly and pull his hair.[58]  Video footage of the incident shows that White did so without provocation and as Ferguson was initially on his knees and then backed up against a wall.[59]  White testified that as he attacked Ferguson, Willie repeatedly yelled at him to stop.[60]  Despite these repeated commands, however, White continued hitting Ferguson.  Ultimately, Willie tackled White.[61]

The foregoing video plainly demonstrates the need for the application of force in this case.  The force employed by Willie was an attempt to stop the altercation started by White; notably, the tackle would not have occurred had White not struck Ferguson.  Indeed, "the use of force is . . . appropriate when necessary to control a 'recalcitrant inmate.'"[62]  As White acknowledged during the *Spears* hearing, Willie's use of force came only after White repeatedly ignored orders to stop beating Ferguson.

---

[55] R. Doc. 63-8 at 11:26-11:32.

[56] *Id.* at 10:35-11:22.

[57] *Id.* at 11:24.

[58] *Id.* at 11:26-11:31.

[59] *Id.* at 11:26.

[60] Willie alleges that the video of the incident supports White's position.  The video provided to the Court does not have audio capabilities, however.

[61] R. Doc. 63-8 at 11:31.

[62] *Brown v. Gusman*, No. 15-CV-1491, 2015 WL 6827260, at *5 (E.D. La. Nov. 6, 2015) (*Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)).

The Fifth Circuit "has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders."[63]  Moreover, the force employed was limited to the amount of force necessary to stop the altercation.  White violently, and seemingly without cause, began to beat Ferguson and, by his own admission, ignored numerous orders to stop.[64]  Based on the summary judgment evidence, the second and third factors—the need for the force applied and the relationship for that need and the amount of force employed—weigh in favor of qualified immunity.

Furthermore, the scene in front of Willie constituted a reasonably perceived threat.  As the Court outlined above, the uncontradicted evidence shows that White, an inmate known by Willie to be violent,[65] attacked a fellow inmate without provocation.  White's actions clearly posed a threat to the institutional security of the prison, both for the individuals involved as well as those surrounding them.  Critically, the altercation occurred in a crowded prison dayroom, which increased the

---

[63] *Schneider v. Kaelin*, No. 12-CV-233, 2013 WL 1867611, at *6 (S.D. Tex. Apr. 21, 2013) (citing *Thomas*, 222 F. App'x at 441).

[64] To the extent the video shows White turning towards Willie prior to Willie tackling him, this does not change the Court's analysis.  Viewing the evidence in the light most favorable to White, the video shows White begin to turn in the direction from which Willie was running a mere two seconds before Willie tackled White.  R. Doc. 63-8 at 11:31.  Even if the video does show White backing off Ferguson two seconds before Willie tackled him, the Court finds that Willie was not objectively unreasonable in considering the risk to Ferguson and the entire facility to be ongoing or failing to register a change in circumstances.  Indeed, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

[65] Willie stated that when he was called to address the altercation between Ferguson and White, he was already familiar with White "due to the violent nature of his past criminal charges."  R. Doc. 63-6 at ¶ 9.

threat of an institutional security threat.[66]  Indeed, "[d]isobeying orders poses a threat to the order and security of an institution."[67]  This factor too weighs in favor of qualified immunity.

As to the final reasonableness factor, it is undisputed that, prior to physically engaging White, Willie repeatedly ordered him to stop hitting Ferguson.  Only after White ignored these commands did Willie tackle him.  Importantly, the video also details the length of time from Willie's entrance into the dayroom, the tackle of White away from Ferguson, and the standing up of White and his removal from the day room. The entire encounter between Willie and White lasted less than forty-five seconds.[68]  Willie sought to temper the severity of his response, and the final factor therefore weighs in favor of qualified immunity.

In sum, Willie was presented with an inmate whom he knew to be violent and who was actively beating a fellow inmate despite orders to stop.  The facts of this case, which the Court views in the light most favorable to White, show no violation of White's constitutional rights.  Having found no constitutional violation, the Court

---

[66] *See Wilson v. Allison*, No. 22-CV-231, 2023 WL 7308106, at *5 (S.D. Miss. Nov. 6, 2023) ("When Officer Johns first struck and subdued [Wilson] in the common room, Wilson had just initiated two physical conflicts with other inmates in the span of five minutes. These fights occurred in the presence of many other inmates, some of whom had approached the scuffles or were tangentially involved, creating the possibility of an institutional security threat."); *Pierce v. Rodriguez*, No. 22-CV-147, 2023 WL 4878863, at *6 (W.D. Tex. July 31, 2023) ("Here, a reasonable officer would have been justified in believing that in each incident some use of force was objectively reasonable . . . due to Pierce's actions and the threat to others and institutional security posed by those actions."); *Kingsley*, 576 U.S. at 399-40 ("[A] court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate.").

[67] *Johnson v. Hill*, 514 F.Supp.3d 958, 968 (S.D. Tex. 2021) (citing *Minix v. Blevins*, No. 06-CV-306, 2007 WL 1217883, at *24 (E.D. Tex. Apr. 23, 2007)).

[68] R. Doc. 63-8 at 11:30-12:06.

finds it unnecessary and declines to consider the remaining qualified immunity prong.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment[69] filed by Defendant Cole Willie is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Randy White's claims against Defendant Cole Willie are **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Exclude Plaintiff's Expert Testimony and Expert Reports[70] filed by Defendant Cole Willie is **DENIED as moot.**

New Orleans, Louisiana, March 7, 2025.

**WENDY B. VITTER**
**United States District Judge**

---

[69] R. Doc. 63.
[70] R. Doc. 61.